■ In the Matter of GLADYS LYNCH, Respondent, v NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM et al., Appellants. — Order, Supreme Court, New York County (William P. McCooe, J.), entered April 12, 1983, which granted the petition of Gladys Lynch to invalidate and declare null and void a determination of the New York City Employees' Retirement System (NYCERS) involuntarily retiring her on ordinary disability, and which directed the City of New York Human Resources Administration (HRA) to continue with the pending grievance proceeding in which Lynch challenged her dismissal, affirmed, without costs. ¶ On July 18, 1980, petitioner was dismissed from her position as caseworker with HRA, effective the close of business that day. This was her second dismissal based on unsatisfactory behavior in the performance of her duties. Petitioner then invoked step III of the grievance procedure pursuant to the collective bargaining agreement between her union and HRA. After conference and review, the review officer denied the grievance. ¶ On April 8, 1981, at a time when petitioner had been discharged, the union filed on her behalf "a request for arbitration". On April 21, 1981, at an arbitration hearing, the parties entered into the following stipulation: "It is hereby stipulated and agreed by and between the attorneys for the above captioned parties that the arbitration scheduled before Mr. Thomas Crowly on this date is adjourned for the purpose of enabling Mrs. Gladys Lynch to submit herself to a psychiatrist of the City's choosing for the purpose of obtaining an evaluation of her fitness to work. Pending submission of the psychiatrist's evaluation, this arbitration shall be adjourned with the arbitrator retaining jurisdiction over the case.

¶ "It is understood that this adjournment is without prejudice to the rights and remedies available to either party and that the psychiatrist's report will be admissible in evidence should this arbitration proceed. It is further stipulated that Mrs. Lynch shall have the right to consult with a psychiatrist of her own choosing and to enter his/her report into evidence at any further proceedings held pursuant to this arbitration." ¶ Pursuant to this stipulation, petitioner underwent a psychiatric examination by a city-designated psychiatrist. The psychiatrist recommended against her reinstatement. Petitioner's own psychiatrist found to the contrary. ¶ Lynch was subsequently notified, by undated letter from the commissioner, that she was being reinstated to inactive pay status to permit her to apply for disability retirement, as follows: ¶ "As you know, following a Step II grievance appeal regarding charges preferred against you, the penalty of dismissal was affirmed. Accordingly, you were dismissed from your position of Caseworker with this Department effective close of business July 18, 1980. ¶ "Pursuant to your appeal, the Arbitrator has directed that you shall be returned to an inactive pay status as an employee in order for you to apply for disability retirement. ¶ "Accordingly, you are being reinstated effective July 1, 1981. Our Employee Benefits Section will forward the required information regarding retirement." ¶ The letter contained a material misstatement. It stated that the arbitrator had directed that she be returned to an inactive pay status as an employee in order for her to apply for disability retirement. There was no such direction by the arbitrator. Whether the statement in the letter was inadvertent or deliberate is immaterial. The point is that the reinstatement on a limited basis was not at the direction of the arbitrator, but the voluntary action of HRA. ¶ Petitioner declined to make an application for disability retirement. However, HRA made such application. It was pursuant to this application that petitioner was retired on ordinary disability. This was against petitioner's will and without any basis in law. No legal foundation is shown for the authority exercised by HRA to reinstate petitioner for the sole purpose of providing an opportunity for a disability retirement proceeding. In the face of the stipulation, it is apparent that this action was taken against Lynch's will. Accordingly, NYCERS was without jurisdiction or authority to proceed with the retirement application submitted by HRA. ¶ The dissent suggests that the HRA retained the option to proceed in this manner in the stipulation provision "that this adjournment is without prejudice to the rights and remedies available to either party". How this provision afforded HRA the right to proceed on the basis of a nonexistent arbitrator's decision does not appear. Plainly the HRA action aborted Lynch's chosen desire to proceed with arbitration. ¶ As the dissent notes, CPLR 7803 provides: "The only questions that may be raised in a proceeding under this article are * * * 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion". The unfounded limited involuntary reinstatement of Lynch by HRA violated these provisions. Hence, there was no jurisdiction for the retirement proceeding. ¶ It is plain that at all times Lynch wished to pursue her arbitration proceeding seeking reinstatement. The fact that she was afforded an opportunity to submit her psychiatrist's report to the Medical Board of the NYCERS, and apparently did so, did not constitute a waiver of her rights to proceed to arbitrate. The opportunity to contest the retirement proceeding is not a substitute for her right to proceed with arbitration. ¶ It may well be that she will be unsuccessful in attaining reinstatement by way of arbitration, or that even if she is successful, a further proceeding to retire her for disability may be instituted. The stipulation preserved her rights, whatever the result. The stipulation did not invest respondents with the right unilaterally to proceed to compel her disability retirement. Nor does the law. Concur — Sullivan, J. P., Bloom and Fein, JJ.

Silverman and Milonas, JJ., dissent in a memorandum by Silverman, J., as follows: I would reverse the order appealed from, and either dismiss the petition, or alternatively order a hearing on the issues of fact relating to the meaning and effect of the stipulation. ¶ Special Term's decision annulled the action of the New York City Employees' Retirement System (NYCERS) in involuntarily retiring petitioner for disability, and directed respondent the City of New York Human Resources Administration (HRA) to proceed with the pending grievance proceeding regarding petitioner's employment. The decision was based on the court's view that the retirement was a violation of a stipulation for adjournment of an arbitration hearing, referred to below. ¶ In the first place, there is serious doubt whether this objection is procedurally available in the present proceeding. This is a CPLR article 78 proceeding in the nature of certiorari to review. In such a proceeding (CPLR 7803): "The only questions that may be raised in a proceeding under this article are * * * 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion". ¶ As the contention that the retirement proceeding was a violation of the stipulation was never made in or in relation to the retirement proceeding until after the Trustees of NYCERS had taken their final action retiring petitioner and was never made at all to the Retirement System, it is not available in this article 78 proceeding. (See *Matter of Levine v New York State Liq. Auth.,* 23 NY2d 863.) An administrative agency cannot be said to be acting arbitrarily or capriciously, or in violation of lawful procedure, because its action is said to be barred by a stipulation which was never called to its attention or urged as a ground for not proceeding. ¶ Furthermore, as a substantive matter, I think the decision appealed from does not give adequate weight to the distinction between misconduct and disability, and the respective substantive and procedural consequences of each. ¶ Misconduct by an employee results in some form of discipline, the ultimate discipline being dismissal. The disciplining and dismissing officer is a commissioner of the department which employs the employee, here HRA. The administrative right to review such dismissal is either by proceedings under section 75 of the Civil Service Law, or alternatively, if so provided by a collective bargaining agreement, the grievance procedure followed by arbitration as prescribed by such an agreement. ¶ Disability, on the other hand, does not imply misconduct. Its normal consequence is retirement for disability, voluntary or involuntary. (We may disregard the remedies under sections 72 and 73 of the Civil Service Law as HRA has not elected to proceed under those sections.) The retiring agency is the Trustees of NYCERS. The procedure is not governed by section 75 of the Civil Service Law, or the collective bargaining agreement, or grievance or arbitration under that agreement, but rather by the relevant provisions of the retirement statute, particularly section B3-39.0 of the Administrative Code of the City of New York. The question of retirement for disability is not submitted to arbitration; I doubt that it can be. In any event, clearly it was not attempted to be submitted to arbitration in this case. ¶ Judicial reversal of the Trustees' action in retiring an employee requires an order to be directed not to the Commissioner of HRA but to the Trustees of NYCERS. And the order of Special Term here does annul the action of the Trustees. It does so on the basis of a stipulation in an arbitration proceeding, when the Trustees were not a party either to the stipulation or the arbitration. ¶ In the present case, the city argues, and I think with much validity, for the following version of the facts (most of them uncontradicted): Petitioner employee had been the subject of a half-dozen disciplinary proceedings based on charges of misconduct. The latest of such proceedings charged various acts on petitioner's part explicitly characterized as "misconduct", recommending dismissal. Pursuant to the collective

bargaining agreement, the grievance machinery was set into motion. Steps II and III of that machinery all reaffirmed petitioner's misconduct and found her "guilty", and affirmed the penalty of dismissal. Thereafter, in accordance with the collective bargaining agreement, a request for arbitration was made stating the grievance as "Appeal of disciplinary *penalty* of termination." (Italics mine.) ¶ On April 21, 1981, the day that the hearing was to be held in arbitration, the union and HRA through their attorneys stipulated to adjourn the arbitration "for the purpose of enabling Mrs. Gladys Lynch [petitioner] to submit herself to a psychiatrist of the City's choosing for the purpose of obtaining an evaluation of her fitness to work." ¶ The parties apparently realized that there was some question as to petitioner's mental condition and contemplated the possibility that if she were mentally ill, there would be retirement instead of dismissal. However, both sides quite clearly reserved all options while waiting to see what the psychiatrist would find. The psychiatrist's report indicated serious questions as to her mental condition. ¶ That the city at least understood that the purpose of the stipulation was to enable petitioner to apply for retirement appears from contemporaneous correspondence. On July 1, 1981, HRA wrote to petitioner saying that "the Arbitrator has directed" (a misstatement) "that you shall be returned to an inactive pay status as an employee in order for you to apply for disability retirement. Accordingly, you are being reinstated effective July 1, 1981. Our Employee Benefits Section will forward the required information regarding retirement." On October 1, 1981 HRA wrote to the Medical Division of NYCERS that petitioner "was reinstated to an inactive pay status effective July 1, 1981 to enable her to apply for disability retirement. As of this date, Ms. Lynch has not filed for retirement in accordance with the terms of the settlement. We are, therefore, initiating her disability retirement pursuant to Personnel Policy and Procedure No. 780-79c." On December 17, 1981 the Medical Board notified petitioner that the Department of Social Services had applied for petitioner's retirement on account of ordinary disability and notified her of the date for conducting medical interviews. Thereafter, there were further psychiatric examinations, and on February 23, 1982 the Medical Board rendered a report certifying that petitioner was incapacitated for the performance of city service and should be retired on ordinary disability retirement. On April 5, 1982 petitioner was notified of the Medical Board's recommendation, and that a resolution recommending approval of the Medical Board's action would be presented to the Board of Trustees. And on April 20, 1982 the Trustees notified her that on April 16, 1982 the Trustees had accepted the recommendation of the Medical Board and had retired her. It was only after this action that her attorneys wrote to the arbitrator requesting the reopening of the hearing and instituted the present article 78 proceeding. ¶ To begin with, even if the arbitration had proceeded and the arbitrator found no misconduct warranting dismissal, the employer HRA could still have applied for petitioner's involuntary retirement for disability. HRA had never waived this power, and certainly the Trustees of NYCERS had never done so. In that situation, the pendency of the arbitration relating to dismissal for misconduct should not be a bar to involuntary retirement for disability. ¶ Although Special Term said that the language of the stipulation of adjournment was clear and that involuntary retirement, which "bypassed" the arbitration, violated the stipulation, I disagree. ¶ The stipulation gave as its purpose "obtaining an evaluation of her fitness to work". But "fitness to work" is another way of saying ability to work — or disability. And the natural implication would seem to be that if petitioner is "evaluated" as not fit to work — i.e., found disabled to work — then the consequences of such a finding may follow, e.g., retirement for disability. While the stipulation provided that the arbitration should be adjourned with

the arbitrator retaining jurisdiction over the case, it also provided "that this adjournment is without prejudice to the rights and remedies available to either party". Thus all parties kept all options open. ¶ That the stipulation also provided that the psychiatrist's report would be admissible in evidence should the arbitration proceed, is not inconsistent with this reservation of all options. The psychiatrist's report might well be relevant if the dismissal arbitration should proceed. If it showed petitioner to be mentally ill, that might excuse her "misconduct"; if it showed her not to be mentally ill, then if she was guilty of misconduct, she might justifiably be dismissed. ¶ That all parties understood that the psychiatrist's examination might result in retirement for disability, voluntary or involuntary, appears from the correspondence which I have quoted. It is confirmed by the fact that with full notice of the retirement proceeding neither petitioner nor her attorneys, so far as appears, objected at any time until after the actual retirement that the retirement proceedings were inconsistent with the stipulation. And even after retirement, petitioner accepted her retirement checks until Special Term's decision. (This failure to object not only supports the interpretation that the stipulation was not meant to bar the retirement proceeding but, as I have said, imposes procedural limitations under CPLR 7803 on the judicial reviewability of the action of the Retirement System.) ¶ It follows that all that is reviewable in this article 78 proceeding is the usual question in disability retirement cases, whether the action of the Medical Board and the Trustees in determining that the petitioner was disabled, was arbitrary or capricious. And the usual rule applies that where there may be a difference of view among physicians, here psychiatrists, as to whether petitioner is medically disabled, the Medical Board and the Trustees of the Retirement System may exercise their own judgment as to which view to accept. ¶ As I think the question of whether the retirement proceeding violates the stipulation is not reviewable in this article 78 proceeding, and in any event HRA could not stipulate away the right to apply for retirement, and that neither the stipulation nor arbitration could bind the Retirement System, the petition should be dismissed. If I am wrong on this, there would be at least a question of a fact requiring a hearing as to the meaning and effect of the stipulation.